(No. 24753.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FELTON BRIDGEWATER, Plaintiff in Error.

*Opinion filed October 17, 1938—Rehearing denied Dec. 8, 1938.*

634

HENRY W. HAMMOND, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, Felton Bridgewater, (hereinafter referred to as defendant,) was convicted in the criminal court of Cook county, on a hearing before the court without a jury, of burglary of a dwelling-house. The evidence for the People tends to establish the following facts:

On the evening of October 21, 1937, at about 7:00 o'clock, Edward J. Young and his wife drove their car to the home of Arthur R. and Anna Peterson at Sawyer and Balmoral avenues in the city of Chicago. Shortly thereafter the four left in Young's car. Returning about 8:30 they observed a car parked on the street near the Peterson home. Mrs. Peterson found that the chain lock was fastened on their front door. Believing someone to be in the apartment, Young went around one side of the building and Peterson the other. Young surprised a colored man, whom he positively identified as the defendant, standing in the yard back of the building, having in one hand a suitcase and in the other a pillowcase full of clothes, which he had taken from the apartment. On seeing Young the man dropped the pillowcase, ran, jumped over a hedge at

the back of the building, and escaped through a vacant lot. Young pursued the burglar until the latter shot at him. Young testified that he was between the negro and the parked car so that he could not escape by running to the car. There was a light at Young's back and shining directly into the face of the burglar, who was but ten or twelve feet away. Young called to his wife to get the license number of the car, which she did. A resident of the next building ran out and told them the car had gone north. An attempt was made to follow it but it was soon lost in the traffic.

The Petersons found that their apartment had been ransacked and articles of clothing and of jewelry were missing. The ownership of the car was traced to the defendant through the license number. Defendant was arrested at his home at 3:45 the next morning. None of the missing property was found on his person nor in the house. When called to the police station Young immediately and positively identified the defendant as the burglar, and both Young and Peterson identified the car as the one they had seen parked there that night.

Paul C. Black, a neighbor of the Petersons, testified to having heard the shot after the Petersons returned, and that he saw a car immediately start north. He said this car had been parked outside of his window, but about seventy-five to one hundred feet away from it, for more than a half-hour.

The defendant testified. He admitted that he was in the neighborhood of the burglary at that time but stated he was not in the apartment and knew nothing about the burglary. He testified he had been using his car as a "jitney" and that on that particular night he had picked up a passenger at Thirty-first street and South Park avenue who asked him to take him to the north side. He testified the passenger was a colored man named Brown; that he was about six feet tall, weighing about 165 pounds, wear-

ing a gray coat and gray hat; that the man gave him $3 on entering the car and directed him where to go; that on arriving at the Peterson residence the man got out saying he worked for some people in the apartment and was going to collect his pay, and asked the defendant to wait for him, and that defendant waited about ten minutes but drove away after the shot was fired, because he didn't "want to be connected with anything wrong." He testified he then went home and changed his clothes and went to a surprise party and then to Bacon's Casino.

Police officer Sidney Levinson testified that the defendant, when questioned on the night of the burglary, told him that he had been at Bacon's Casino at 11:30, but that a check-up showed neither defendant nor his car were seen there. He also testified that he took defendant to Thirty-first street and South Park avenue where four different persons by the name of Brown lived, all of whom were shown to them but none of whom the defendant identified as the man he had taken in his car to the scene of the burglary. The defendant also testified that when he returned home to change his clothes, after the burglary, there were four men at his house playing cards. His mother testified that he left the place about 6:00 o'clock in the evening and she did not see him thereafter. No witnesses were produced to corroborate his testimony concerning the card game, nor to show the whereabouts of the defendant between the time of the burglary and his arrest. He testified that his car had no lettering on it, showing it to be a taxicab, but he does not explain how his passenger knew he was running a "jitney." Eight witnesses testified defendant had always borne a good reputation as a law-abiding citizen.

The ground on which reversal of the judgment is sought is that the finding of guilt is contrary to the law and the evidence. Defendant's counsel argues that the evidence does not establish defendant's guilt beyond a reasonable doubt; that all the undisputed evidence offered by the de-

fendant showed that he was the man in the automobile and not the burglar, and that as none of his testimony was impeached it should be taken as true. The rule of law is that the People must prove beyond a reasonable doubt both that the crime was committed and that the defendant is guilty of commission of the crime. (*People* v. *Buchholz,* 363 Ill. 270.) However, the defendant's testimony is not entirely undisputed. In urging that it is, defendant's counsel overlooks the fact that his statements at the trial as to how long his car was parked at the Peterson residence and where he was on that particular night, are contradicted by several witnesses. The witness Young, who, so far as the record shows, was entirely disinterested, and had an ample opportunity to see the burglar under a light at a distance of ten to twelve feet, positively identified defendant as the man whom he saw back of the apartment and who shot at him.

This court has frequently held that the testimony of one witness may be sufficient upon the question of identity,· and though guilt is denied by the accused, one witness may be sufficient to sustain the conviction. *People* v. *Majczek,* 360 Ill. 261; *People* v. *Fortino,* 356 id. 415; *People* v. *Schanda,* 352 id. 36.

The question of fact in this case was for the court hearing the evidence, and unless this court is convinced that the finding of guilt is contrary to the weight of the evidence, it is not warranted in setting that finding aside. *People* v. *Diekelmann,* 367 Ill. 372.

Defendant's counsel argues that courts will take judicial notice of the fact that it is difficult for a white man who has not had experience in so doing, to distinguish between colored men who have the same general appearance. In support of this argument he cites 16 Corpus Juris, 512, in which is cited *State* v. *Main,* 69 Conn. 123. In this case, however, the identification of the defendant was positive by an eye-witness, and were it to be said that the court

should take judicial notice of any difficulty in such identification no such rule of judicial notice could apply here, in the face of this positive testimony.

Defendant's counsel also argues that the testimony bearing on the question of identity rests upon height, weight, age, kind of clothes and general appearance, none of which is described as unusual and all of which are common to so many men as to be of little weight in proof of identity of any one individual. He cites in support of this contention *People* v. *Scott,* 296 Ill. 268. The rule there laid down can have no application here, since the identity of Bridgewater does not depend upon general description but upon positive identification.

It is also argued that since eight reputable witnesses testified the defendant had a good reputation as a peaceful, law-abiding citizen, that evidence was sufficient to establish a reasonable doubt of defendant's guilt. A reputation for being a peaceful and law-abiding citizen neither tends to prove guilt nor innocence but is positive evidence to be considered by a jury or the court, in case of jury waiver, and may be sufficient to raise a reasonable doubt of defendant's guilt when charged with crime. (*People* v. *Fisher,* 295 Ill. 250.) There is nothing in the record to show that the court did not take into consideration the previous good reputation of the defendant in reaching a decision as to his guilt. The record does show, on the contrary, that the court commented on such previous good reputation.

No errors of law have been charged. The question of the guilt of the defendant was purely a question of fact for the trial court to determine. This court is unable to say that its finding in that behalf should not be sustained.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*