THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* MITCHELL J. WEINGER, Defendant-Appellee.

First District (2nd Division)   No. 78-106

Opinion filed August 1, 1978.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Harry J. Busch and Sherman C. Magidson, both of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

The State appeals from an order of the circuit court of Cook County quashing a search warrant and suppressing evidence seized pursuant thereto. (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)(1).) The State contends that the affidavit for the search warrant was sufficient to establish probable cause for its issuance. Defendant, Mitchell Weinger, who was charged with two murders, contests that probable cause was established and further maintains that the affidavit failed to show an adequate basis for the belief that the items sought by police were at his apartment.

The record shows that the bodies of Mark Demetrius and Marigray Jobes were discovered by the former's father and the building superintendent of the latter's apartment. Both had been stabbed to death. The request for a search warrant for defendant's apartment was made by Chicago Police Officer John Philbin, who was assigned to investigate the case. He averred that the murders occurred between 11 p.m. on March 1, 1976, and 2 a.m. the following day. Attached to the affidavit and incorporated therein was a multipage police report concerning the crimes.

The affidavit detailed a police investigation which led to Cedric Sbrena who informed police he was in the Jobes apartment shortly before the killings. Defendant then arrived to purchase cocaine, and he and Demetrius entered the bathroom. Sbrena told police he heard moans emanating from the bathroom as defendant emerged carrying a one-foot long carving knife. He looked and saw Demetrius lying on the bathroom floor covered with blood. Allegedly, defendant came at Sbrena, but the latter pulled a gun to thwart the attack and then fled leaving Jobes and defendant in the apartment. Sbrena later returned to find Jobes had been killed.

Sbrena informed Officer Philbin that about 10 grams of cocaine were in the apartment at the time although only 2.6 grams were recovered by police from Jobes' body. Sbrena also described the clothing worn by defendant that night. Other information disclosed the description of a purse owned by Jobes which was missing, and the fact the apartment keys and Demetrius' car keys were missing. Since the apartment was covered with blood, in seeking the warrant for defendant's residence

Officer Philbin asserted that defendant's clothes might contain traces; he also sought the knife, keys, handbag and cocaine.

As pertinent to this appeal the police report incorporated into the complaint for the search warrant indicated each victim died of multiple stab wounds. The report detailed the blood-splattered premises and location of the bodies and was apparently compiled before the police located Sbrena.

The report also summarized the information supplied by Demetrius' father. He told police that his son asked him on March 1, 1976, to telephone the Jobes apartment about 7 a.m. on March 2. When his father complied, he received no answer, and his repeated phone calls throughout March 2 were unanswered. Demetrius was then advised by his wife that their son's pistol was missing.

On March 3, Demetrius' father talked to Sbrena, who said that he also unsuccessfully tried to call Demetrius two days before. Demetrius' father went to the Jobes apartment where he was admitted by the building manager after disengaging two door locks; the victims' bodies were then discovered. During the evening of March 3 Sbrena called Demetrius' father to obtain details of the incident after supposedly learning of the occurrence from police.

The report further indicated that the police interviewed the brother of Marigray Jobes who advised them that he saw Demetrius obtain a small amount of cocaine on the evening of March 1, 1976. They returned to the Jobes apartment where Demetrius began to weigh the cocaine. At this time Demetrius remarked that Sbrena would be angry because there was only a small amount of cocaine left and about $600 worth of the substance was used. Demetrius said that he and Sbrena were partners in the sale of cocaine, and the latter would arrive shortly to pick it up. Jobes' brother then left about 10 p.m.

The search warrant for defendant's apartment was issued on March 6, 1976.

It is clear that the trial court in granting defendant's motion to quash the search warrant relied on *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, in holding the affidavit for the warrant was insufficient because it did not establish any basis to show that Sbrena was credible and his information reliable. Moreover, the court found no basis in the affidavit to conclude that the police had reason to believe the items sought were in defendant's apartment.

Noting that the affidavit for the search warrant relied principally on hearsay information supplied by Sbrena, the State urges that various bases existed to credit Sbrena's statements. Defendant maintains that the trial court was correct in rejecting the credibility of Sbrena, whom defendant characterizes as a cocaine dealer who twice failed to tell

Demetrius' father of his knowledge of the incident and asked the latter for details. Defendant suggests that Sbrena had ample motive to commit the offenses himself.

It is clear, though, that several factors were corroborated by police investigation from other sources which provided a substantial basis to credit Sbrena's claims concerning the events transpiring in the Jobes apartment. (See *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280; *People v. Lindner* (2d Dist. 1975), 24 Ill. App. 3d 995, 322 N.E.2d 229.) There is nothing to show that Demetrius' father knew of the presence of cocaine, although Sbrena informed the police of the matter and provided a detailed amount he thought was in the apartment before the slaying. A substantially smaller amount was found suggesting the remainder was taken by the slayer. Moreover, a description of Jobes' purse given by Sbrena was corroborated by her brother. The latter also told police that Sbrena was to arrive at the apartment shortly before the killings took place which would have placed Sbrena at the scene at or near the time the murders occurred. Also, unlike *Aguilar* the informant in this case was identified. *People v. Morrison* (4th Dist. 1973), 13 Ill. App. 3d 652, 300 N.E.2d 325.

The State also maintains that Sbrena's credibility need not be judged by the more stringent standards applied to an undisclosed, paid police informant. (*People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466, *cert. denied*, 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408.) *Hester* emphasized the lack of gain by those furnishing the information. (*People v. Isenberg* (1st Dist. 1977), 52 Ill. App. 3d 426, 367 N.E.2d 364.) In the present case a possible improper motive for Sbrena's version of the incident might arise. Yet there is nothing in the information furnished to the judge, who issued the warrant, to indicate that Sbrena was offered consideration for information he supplied to police. Also, there can be no claim that any information furnished by Officer Philbin was deliberately false or given in reckless disregard for the truth. *Franks v. Delaware* (1978), ___ U.S. ___, ___ L. Ed. 2d ___, 98 S. Ct. 2674.

Even assuming that Sbrena was involved in narcotics transactions with Demetrius, as defendant claims, it is not unreasonable to view Sbrena's initial actions with Demetrius' father as an attempt to avoid a possible narcotics prosecution by feigning ignorance of the situation. But there is nothing in the matters presented to the judge, who issued the search warrant, which showed that Sbrena continued to assert such ignorance when confronted by police.

In *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, the court considered the situation involving information supplied by other than the affiant. While the court adhered to its holding in *Aguilar* that the reliability of the informant must be established and some basis

shown that his information was accurate, it reiterated that its decision did not curtail established precedent: "that only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause [citation]; that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial [citation]; that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense [citations]; and that their determination of probable cause should be paid great deference by reviewing courts [citation]." (393 U.S. 410, 419, 21 L. Ed. 2d 637, 645, 89 S. Ct. 584.) In the present case the assertions contained in the affidavit for the search warrant provided a reasonable basis linking defendant to the offenses and probable cause was established for issuance of the warrant.

We further reject defendant's claim that the complaint for the warrant did not sustain a reasonable possibility that the evidence sought was in defendant's apartment. In *People v. Hammers* (4th Dist. 1976), 35 Ill. App. 3d 498, 341 N.E.2d 471, the court sustained a search of the defendant's home for the gun used in the shooting several days after the occurrence because it was reasonable to infer the weapon was at defendant's house. Similarly, in *People v. Ruopp* (2d Dist. 1978), 61 Ill. App. 3d 140, 377 N.E.2d 1317, defendant claimed that no basis was demonstrated to indicate the weapon and clothes used in several armed robberies were in his apartment. The court rejected his assertion stating it was reasonable to believe these items were there.

In the present case the police sought several items of clothing and jewelry purportedly worn by defendant when the murders were committed which could have contained traces of the victims' blood. It is a logical supposition that defendant would have these articles in his apartment. Also, as in *Hammers* and *Ruopp*, it would be a proper inference that the possible weapon would be there. The police sought the purse, car keys and cocaine missing from the Jobes apartment. If these items were removed by the defendant, then his residence would seemingly be a place to hide them.

Accordingly, the order of the circuit court quashing the search warrant and suppressing evidence seized pursuant thereto is reversed and the cause remanded for further proceedings.

Order reversed and cause remanded.

DOWNING and BROWN, JJ., concur.