THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID A. WOLSKI, Defendant-Appellant.

Second District   No. 78-306

Opinion filed March 24, 1980.—Rehearing denied May 13, 1980.

18

Frederick F. Cohn and Julius Lucius Echeles, both of Chicago, for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

After trial by jury, defendant, David A. Wolski, was convicted of murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(2)) and was thereafter sentenced to a term of 20 to 25 years' imprisonment.

He brings this appeal asserting numerous grounds of error: (I) that the warrant for a search of his person, house and automobile was issued without probable cause and should have been quashed and the articles seized thereunder suppressed; (II) that his inculpatory statements to investigating officers should have been suppressed; (III) that the trial court erred in failing to instruct the jury on self-defense and on voluntary and involuntary manslaughter; (IV) that he lacked effective assistance of counsel; (V) that two prospective jurors should have been excused for cause; (VI) that testimony as to defendant's reputation, and (VII) the victim's alleged character trait for violence, was improperly excluded; (VIII) that his statement to the police was erroneously characterized as a confession in the instructions; and (IX) finally, that his conviction should be reduced to manslaughter or the sentence imposed for murder be reduced.

The body of Joy E. Lewis, age 14, was found on July 22, 1977, in

underbrush approximately 60 feet from Hafenrichter Road on a farm in Kendall County. The body was not clothed below the waist, and large quantities of blood were found within a radius of three to four feet from it; the girl had suffered multiple blows to the head, crushing her skull and causing death. A Master Charge sales slip dated July 21, 1977, in defendant's name and signed by him, was found about six feet from the body. The remaining evidence introduced at trial consisted substantially of clothing belonging to defendant, the purported murder weapon, inculpatory pretrial statements attributed to defendant, and his own testimony in the course of trial.

Defendant's testimony in trial differed little from his pretrial statements to the investigating police officers. As given in evidence both disclosed that about 7 p.m. on July 21, 1977, defendant drove from his home in Naperville to pick up a television set from a friend's house. While en route he picked up a hitchhiker, subsequently determined to be the decedent, Joy E. Lewis, who asked to be driven to her brother's apartment in Aurora, and defendant agreed to do so. In Aurora, however, although defendant followed her directions they were unable to find the apartment. He stated that she giggled and talked continuously and that at one point she suddenly aimed her purse at him as if it contained a gun and instructed him to drive out on a country road. He complied, but after stopping the car he said he managed to grab the purse and discovered then that it did not contain a gun. In his statement to the investigating officers defendant said that he "made a pass at her," but in his testimony at trial he stated that it was the girl who suggested that they have sexual relations. This is the only essential difference between defendant's pretrial and in-trial accounts of this incident.

Defendant stated that when he unzipped his trousers and turned to her a struggle began in which she struck him in the groin with her knee and tried to scratch his face; he said he hit her with his fist to stop the struggle and struck her head with a steel rod that had been laying on the floor of his car. She then fell limp and he removed her from the car; he was uncertain whether or not he hit her again outside the car with the steel bar. Defendant stated he threw her belongings, a purse, radio and camera, from the car and, although he noticed his Master Charge receipt had fallen to the ground, he drove away from the scene without retrieving it. Defendant told the investigating officers that he disposed of the steel bar by throwing it into a field away from the scene; it was subsequently recovered by police officers following his directions.

Defendant stated he then drove to a gas station where he washed blood from his hands, completed the errand to his friend's house and returned home. At home he changed his clothing and placed his bloodstained undershorts in a bathrobe pocket.

Based upon the complaint and affidavit of an investigating police officer, a judge issued a warrant on July 22, 1977, for the search of defendant's person, home and automobile for evidence of the murder. Defendant was not at home when the officers first arrived for the purpose of executing the warrant, but he came shortly thereafter in his automobile. The officers exhibited the search warrant to defendant, informed him that he was a suspect in a homicide case, advised him of his *Miranda* rights and proceeded to carry out the search as directed by the warrant. As a result of this search the officers seized defendant's bloodstained undershorts in the house and seized from his automobile samples of hair which were later determined to have the same characteristics as the decedent's hair.

Defendant thereafter gave a detailed statement relating his contact with the decedent.

## I.

Defendant contends first that the warrant issued for the search of his person, house and automobile, failed to satisfy the requirements of the Federal and Illinois constitutions and section 108—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108—3). He asserts the search warrant should have been quashed as defective on these grounds:

(A) that the complaint and affidavit for the search warrant did not establish probable cause;

(B) that the complaint failed to list the items to be seized; and

(C) that it contained unexplained handwritten additions.

## A.

■■ A complaint and affidavit for the issuance of a search warrant must be considered by the issuing judge and reviewing court in a common-sense, realistic fashion (*People v. McGrain* (1967), 38 Ill. 2d 189, 230 N.E.2d 699), and great deference should be paid to the issuing judge's determination of probable cause (*Spinelli v. United States* (1969), 393 U.S. 410, 419, 21 L. Ed. 2d 637, 645, 89 S. Ct. 584, 590). Our supreme court has held that the probable cause required for the issuance of a search warrant has two dimensions: first, facts must be related which would cause a reasonable man to believe a crime has been committed; second, facts must be set forth which would cause a reasonable man to believe that evidence of the crime is in the place to be searched. *People v. George* (1971), 49 Ill. 2d 372, 274 N.E.2d 26; *People v. Francisco* (1970), 44 Ill. 2d 373, 255 N.E.2d 413.

■■ The complaint and affidavit in this case, signed under oath by one of the investigating police officers, alleged in relevant part:

"1. That on the 22nd day of July, the dead body of one Joy E. Lewis was discovered in a wooded area adjacent to Hafenrichter Road near the intersection of Hafenrichter Road and U.S. Route 34 in Kendall County.

2. That a 2 x 4 board with protruding nails was found near the body of Joy E. Lewis with blood thereon, which board apparently inflicted the mortal wounds.

3. That near the body was also a charge receipt from a Master Charge account of one David N. [sic] Wolski of 1321 Frederick Street, Naperville, IL bearing a date of July 21, 1977.

4. That Joy E. Lewis was last observed hitchhiking on Washington Street near Bailey Road in Naperville at 8:15 p.m. on July 21, 1977.

5. That the residence of David N. [sic] Wolski, 1321 Frederick Street is near the point of last observation of Joy E. Lewis and is approximately 1 to 1½ miles therefrom."

We are satisfied, contrary to defendant's argument, that the complaint established probable cause. The first and second factual allegations establish the probability that a homicide had taken place. The third allegation would lead a reasonable person to believe evidence of the crime could be found in the places sought to be searched; the sales receipt, bearing so recent a date and found near the body, established the probability that defendant was linked to the offense so as to reasonably permit the search for which authorization was sought. See *People v. Weinger* (1978), 63 Ill. App. 3d 171, 379 N.E.2d 810.

Defendant also suggests the form of the complaint was defective in that it failed to specify the source of each fact alleged in it. This contention is waived on appeal as defendant failed to raise it at the hearing of his motions to quash the search warrant and suppress the evidence; nor was it preserved by the general averment in his post-trial motion that the complaint contained insufficient facts to establish probable cause. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Limas* (1977), 45 Ill. App. 3d 643, 359 N.E.2d 1194.) We note, moreover, that defendant has cited no relevant authority which supports his argument. (*People v. Martin* (1977), 46 Ill. App. 3d 943, 361 N.E.2d 595 (probable cause for an arrest); *People v. Vanco* (1977), 55 Ill. App. 3d 151, 371 N.E.2d 82 (affidavit devoid of factual allegations); *People v. King* (1973), 12 Ill. App. 3d 355, 298 N.E.2d 715 (warrantless stop and search of automobile); and *People v. Damon* (1975), 32 Ill. App. 3d 937, 337 N.E.2d 262 (stop and frisk, illegal arrest) are inapposite.) The police officer's sworn representations of fact in the complaint were sufficiently definite so that, if false, perjury could be assigned (*People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341; *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d

667, 98 S. Ct. 2674), and the warrant will not be quashed on the basis urged by defendant.

## B.

Defendant also argues that the complaint was defective in that it failed to list any of the items to be searched for and seized, and he takes exception to the search warrant's broad authorization of seizure of "articles of clothing with blood or male or female secretions thereon."

Article I, section 6 of the Illinois Constitution of 1970 and section 108—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108—3) require that a complaint for a search warrant describe with particularity the "place or person, or both, to be searched and the things to be seized." The purpose of that requirement is to prevent the issuance of general search warrants. *People v. Elias* (1925), 316 Ill. 376, 147 N.E. 472; *People v. Holmes* (1974), 20 Ill. App. 3d 167, 312 N.E.2d 748.

The complaint in this case sought authorization to seize "the following instruments, articles and things which have been used in the commission of, or which constitute evidence of, the offense of murder," but it did not further describe in greater detail the items to be seized. The search warrant, however, did describe the items which could be seized under its authority: "blood, articles of clothing with blood or male or female secretions theron [*sic*], jewelry and other personal items formerly in possession of Joy E. Lewis, hair from the head of Joy E. Lewis, dirt, grass on [*sic*] other materials or things from the area where the body of Joy E. Lewis was found. fingerprints [*sic*] of Joy E. Lewis." The record discloses that both the complaint and warrant were drafted by the same persons and were presented simultaneously to the issuing judge who affixed his signature to both documents.

■■ It has been held that, in accordance with sound legal practice, the issuing judge may be presumed to have read both the warrant and accompanying complaint before issuing the search warrant. (*People v. Mays* (1974), 25 Ill. App. 3d 435, 323 N.E.2d 409 (abstract).) Under the circumstances of this case, therefore, we see no error in the trial court's ruling on this point. The failure of the complaint to specify the items to be seized, while not a practice to be encouraged, was in the nature of a technical defect not affecting the substantial rights of the accused (Ill. Rev. Stat. 1977, ch. 38, par. 108—14) and did not constitute a basis for quashing the search warrant or suppressing the evidence seized thereunder. The warrant described the items to be seized with as much exactitude as was possible at that stage of the investigation (see *People v. Raicevich* (1978), 61 Ill. App. 3d 143, 377 N.E.2d 1266), and sufficiently limited the discretion to be exercised by the officers in conducting the

search. (See *People v. Prall* (1924), 314 Ill. 518, 145 N.E. 610; *People v. Sovetsky* (1931), 343 Ill. 583, 175 N.E. 844.) The present case must be distinguished from *People v. Prall* and *People v. Bishop* (1979), 71 Ill. App. 3d 52, 388 N.E.2d 1144, referred to by defendant, wherein the warrants themselves failed to describe the items to be seized.

### C.

■ Defendant also objects to certain handwritten interlineations on the face of the typewritten complaint and in the body of the search warrant, and suggests the warrant was thereby invalidated. To the complaint was added: "10. The dead body was nude from the waist down and appeared to be sexually molested," initialed by the affiant officer; to the warrant was added "[clothing with blood] or male or female secretions" and "fingerprints of Joy E. Lewis," both items clearly initialed by the issuing judge. These alterations did not affect the substantial rights of defendant. (See *People v. Fitzgerald* (1975), 35 Ill. App. 3d 58, 340 N.E.2d 591.) We find no parallel between these facts and those of *People v. West* (1977), 48 Ill. App. 3d 132, 362 N.E.2d 791, relied on by defendant, wherein the issuing judge materially altered the search warrant pursuant to the "unsworn, factually unsupported oral speculation" of a police officer not the affiant in the complaint. 48 Ill. App. 3d 132, 135, 362 N.E.2d 791, 794.

### II.

Defendant next contends that the inculpatory statement he gave to the investigating officers at the police station should have been suppressed and asserts, first, that it was the fruit of a warrantless arrest made without probable cause. His argument is grounded on a claim that he was illegally placed under arrest when he first encountered the officers on alighting from his car on the driveway to his house, and that at that moment the arresting officers did not have enough facts or evidence to constitute probable cause that defendant had committed an offense. At the hearing of his motion to suppress defendant testified that officers informed him at that time he was under arrest; three officers who were present during the search testified, however, that defendant had not been placed under arrest before the search of his home disclosed his bloodstained undershorts. Testimony further disclosed that defendant was searched as soon as he got out of his car and he was then taken into the house where he was instructed to remain in a chair while the search of his house and car were carried out.

■ An arrest is effected by "an actual restraint of the person or by his submission to custody." (Ill. Rev. Stat. 1977, ch. 38, par. 107—5(a).) Defendant's argument, that the initial restraint of his person amounted to an illegal arrest requiring suppression of his statement defies logic. He

must necessarily have been reasonably restrained in order for police officers to execute the search of his person authorized by the search warrant. As defendant was lawfully restrained under the authority of the search warrant, that restraint cannot form a basis for suppression of the fruits of the search or of his subsequent arrest.

We note further that section 108—9 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108—9) approves detention of persons on the premises to be searched in order to preserve the scene and to assure the safety of the officers conducting the search. It is apparent the restraint and search of defendant was carried out at the earliest opportune moment. See *People v. One 1968 Cadillac Automobile VIN #J8316714* (1972), 4 Ill. App. 3d 780, 281 N.E.2d 776.

■■ The second prong of defendant's argument for the suppression of his statement is that he did not make a knowing and voluntary waiver of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. We cannot agree. It is undisputed in the record that defendant was twice fully advised of his rights, the first time before any questioning, and he acknowledged this fact in his own testimony. He also testified at trial that he did in fact understand his *Miranda* rights and had voluntarily waived them. While he suggests now on appeal that he did not knowingly and voluntarily waive his rights, we are unimpressed by his present argument in light of his testimony at trial.

We find that the trial court correctly refused to suppress defendant's statement and that defendant's response to an inquiry from a police officer as to whether he wished to waive his rights, "I don't wish to but I certaining [*sic*] will," does not require a contrary finding.

### III.

Defendant next contends that the trial court erred in failing to instruct the jury as to voluntary manslaughter (Ill. Rev. Stat. 1977, ch. 38, par. 9—2(b)), and self-defense (Ill. Rev. Stat. 1977, ch. 38, par. 7—1), and involuntary manslaughter (Ill. Rev. Stat. 1977, ch. 38, par. 9—3). Defendant's tendered instructions relating to the latter two subjects were refused by the trial court; no instruction on voluntary manslaughter was tendered by him, however, so he has waived consideration of that question on appeal. *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.

Initially we address the question whether there was "some evidence" of self-defense presented at trial, in accordance with section 3—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 3—2(a)), and based on the record before us we agree with the trial court's refusal to instruct on self-defense. In his statement to the police defendant said he had attempted sexual relations with the decedent and that she thereupon struck him in the groin with her knee, an action which "startled" him. He

further acknowledged that although she hit him in the face with her fist, "it wasn't much of a, of a blow." Defendant then hit her on the head with a 2½-pound 11½-inch-long steel bar while positioned on top of her on the front seat of his car; he was 26 years old, a veteran, and weighed approximately 265 pounds, while decedent was 14 years old and weighed about 120 pounds. Responding to a question during his post-arrest interrogation as to whether he again struck decedent outside the car, defendant said "I don't recall doing it. I, I just say I must have because there was, there was blood all over me, my hands."

As evidence of self-defense, defendant points to his undershorts, stained with blood of his own type, not of decedent's. We find this insufficient to lend support to his claim of self-defense. There is no evidence in the record, nor did defendant suggest in his testimony, that any conduct of decedent caused him pain, injury or bleeding. The blood stains on his clothing are generally unexplained and it cannot be determined from the record when they occurred.

As the record is devoid of evidence of self-defense, the trial court need not have instructed as to that issue. (See *People v. Allen* (1972), 50 Ill. 2d 280, 278 N.E.2d 762.) For the same reasons we reject defendant's argument that the trial court should have instructed *sua sponte* on voluntary manslaughter. *People v. Wilkins* (1976), 36 Ill. App. 3d 761, 344 N.E.2d 724.

In support of his contention that the trial court erred in refusing his tendered instruction on the lesser included offense of involuntary manslaughter, defendant theorizes that a jury might have found he hit Joy Lewis only once, and was merely reckless in leaving her lying injured at the roadside where some unknown person killed her. Where there is some evidence in the record which, if believed by a jury, would reduce the crime to involuntary manslaughter, a defendant is entitled to an instruction defining the lesser included offense if he so requests (*People v. Joyner* (1972), 50 Ill. 2d 302, 306, 278 N.E.2d 756, 759), but such evidence is lacking in this case.

■■ Recklessness in the performance of an act is an essential element of the offense of involuntary manslaughter. (Ill. Rev. Stat. 1977, ch. 38, par. 9—3.) The offense is also characterized by the absence of an intent to kill or inflict injury. (Ill. Rev. Stat. 1977, ch. 38, par. 9—3; *People v. Farmer* (1977), 50 Ill. App. 3d 111, 365 N.E.2d 177.) Defendant's own description of the incident militates against a finding that he acted recklessly or lacked the requisite knowledge for a finding of murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(2)); to the contrary, his acknowledged conduct in striking the girl on the head with a steel bar can only be viewed as deliberate and volitional. He stated he believed she was dead when he left the scene. The trial court therefore correctly refused defendant's tendered instruction

on involuntary manslaughter. See *People v. Cannon* (1971), 49 Ill. 2d 162, 273 N.E.2d 829; *People v. Latimer* (1966), 35 Ill. 2d 178, 220 N.E.2d 314; and *People v. Boisvert* (1975), 27 Ill. App. 3d 35, 325 N.E.2d 644.

For these same reasons, we also decline to reduce defendant's murder conviction to either voluntary or involuntary manslaughter.

## IV.

Defendant next contends that he lacked effective assistance of counsel at trial because his attorney was incompetent. The standard applied in Illinois to judge the competence of retained counsel is whether the caliber of representation was so low as to amount to no representation at all or to reduce the court proceedings to a farce or sham. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Anderson* (1978), 65 Ill. App. 3d 783, 382 N.E.2d 866.) From our examination of the record we find the representation afforded to defendant did not violate that standard.

As evidence of his attorney's incompetence, defendant points to his failure to request a voluntary manslaughter instruction. We find no prejudice to defendant by this omission, however, for his previously tendered self-defense instruction was correctly refused on the ground that there was no evidence of self-defense; in that light, it would have been a meaningless act to seek a voluntary manslaughter instruction based on unreasonable self-defense, the only remotely possible version of voluntary manslaughter under this evidence.

Defendant also maintains that his attorney "floundered" in his attempts to introduce testimony of character witnesses; that his counsel failed to know defendant's statement was an admission and not a confession; and that his final argument consisted of "organized ramblings." To the contrary, defendant's attorney did successfully introduce character testimony; defendant's statement was indeed a confession, not merely an admission; and we do not agree with his characterization of his counsel's closing argument.

Finally, contrary to defendant's argument, we do not believe defense counsel's voir dire examination of prospective jurors regarding psychiatry and psychiatric testimony, when he later failed to offer such testimony, rendered the trial a farce or sham.

## V.

Defendant contends next that the trial court erred in refusing to challenge for cause two prospective jurors who were former clients of the prosecutor, thereby forcing defendant to use his peremptory challenges. He argues that these persons as jurors could not have maintained objectivity and impartiality in view of the nature of the former lawyer-client

relationship and, therefore, the impairment of his right to a full allotment of challenges requires reversal. (*United States v. Boyd* (5th Cir. 1971), 446 F.2d 1267.) Under the circumstances of this case, however, we do not agree. The prosecutor had represented one of the prospective jurors in a real estate closing about 3 years before this trial, and had drafted the will of another prospective juror 10 years before it. Neither of the prospective jurors had employed his professional services at any other time, and both responded in their examinations that they would be impartial regardless of their prior contact with the prosecutor.

We do not find the former relationship between these jurors and the prosecutor was such as to require their exclusion for cause, particularly in that they stated under oath that it would not affect their resolution of the issues in this case. We see no prejudice to defendant in the fact that he used two peremptory challenges to exclude these jurors for, after exhausting his 10 peremptories, he did not seek to challenge any remaining prospective jurors for cause, and he does not now suggest he wished to challenge any of the last few jurors chosen to hear this case. The determination of whether a challenge for cause should be allowed rests within the sound discretion of the trial court (*People v. Harris* (1967), 38 Ill. 2d 552, 232 N.E.2d 721), and that discretion was not abused here.

## VI.

Defendant next asserts the trial court erred in excluding certain testimony by three witnesses relating to his reputation for truth, veracity and peacefulness. Defense counsel asked one witness, Tom Zrout, about defendant's honesty, but in response to an objection, he withdrew the question without a ruling by the court. He then questioned Zrout about defendant's reputation for integrity, an objection to which was sustained. We find no error in that ruling, as Mr. Zrout's testimony later had to be stricken in its entirety when it became clear that he was inadequately acquainted with defendant's reputation. *People v. Moretti* (1955), 6 Ill. 2d 494, 129 N.E.2d 709.

Defense counsel also sought to elicit reputation testimony from Richard Modell, a Lisle resident who knew defendant only from defendant's visits to relatives residing in Lisle. Defendant, however, lived in Berwyn until about the time of the homicide in this case and did not move to Lisle until a week after the homicide. Modell's testimony was correctly stricken as it related to the time defendant lived in Berwyn for Modell was not familiar with defendant's reputation in that community. (*People v. Moretti.*) We also note that the portion of Modell's testimony which related to the period defendant resided in Lisle could have also been stricken. Evidence of character must be confined to proof of the accused's general reputation among his neighbors and associates at or

before the commission of the offense. *People v. Willy* (1921), 301 Ill. 307, 133 N.E. 859; *People v. Bascomb* (1979), 74 Ill. App. 3d 392, 392 N.E.2d 1130.

William Hoy, a co-worker of defendant, was also called to testify and when asked by counsel for defendant's "reputation in the community for violence," he replied, "I wouldn't know of any." When asked "[w]hat is [defendant's] community reputation whether you know of any or not?" Hoy replied, "I would say good." At the prosecutor's request the court struck the testimony in its entirety. Defendant now argues this was testimony as to his reputation for peacefulness to which he was entitled.

■■ We find no error in the court's ruling. Where an accused is charged with a crime of violence, as here, evidence of his good reputation for peacefulness is relevant (*People v. Bridgewater* (1938), 369 Ill. 633, 17 N.E.2d 556), but one cannot, however, have a good reputation for violence. See *People v. Partee* (1974), 17 Ill. App. 3d 166, 308 N.E.2d 18.

## VII.

Defendant next contends the trial court erred in excluding evidence that decedent had participated in fights at school. He argues that as the excluded evidence of particular prior acts was offered to reveal a character trait of the decedent, not her general reputation, it was relevant and admissible to establish her alleged propensity for aggression.

■■ It is well established that where a claim of self-defense is made, and at the time of the incident the accused knew of the victim's reputation for violence or knew of specific violent acts by the victim, proof of such reputation or acts together with the accused's knowledge thereof is relevant and admissible to establish the reasonableness of the accused's apprehension of danger. *People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83; *People v. Allen* (1941), 378 Ill. 164, 37 N.E.2d 854; *People v. Adams* (1979), 71 Ill. App. 3d 70, 388 N.E.2d 1326; *People v. Ortiz* (1978), 65 Ill. App. 3d 525, 382 N.E.2d 303; *People v. Peeler* (1973), 12 Ill. App. 3d 940, 299 N.E.2d 382.

In arguing for the admissibility of evidence of the victim's prior conduct defendant relies in part on *People v. Stombaugh* (1972), 52 Ill. 2d 130, 284 N.E.2d 640, wherein our supreme court said that "evidence concerning the violent temper and disposition of the deceased and his prior threats to the defendant is admissible as tending to show the circumstances confronting the defendant, the extent of his apparent danger, and the motive by which he was influenced. Such circumstances are relevant in that they tend to show the defendant's state of mind. (*People v. Davis* (1963), 29 Ill. 2d 127, 129, 130; [citations].)" 52 Ill. 2d 130, 139, 284 N.E.2d 640, 645.

The *Davis* opinion upon which the *Stombaugh* court relied clearly

qualified, however, the admissibility of evidence of a decedent's character trait by stating it must be a trait of which defendant was aware at the time of the killing. (29 Ill. 2d 127, 130, 193 N.E.2d 841, 843.) The *Stombaugh* decision did not purport to overrule *Davis* in this regard. Thus the law in Illinois still requires the exclusion of evidence of a victim's propensity for aggression unless the accused knew the victim had that trait. To the extent that they suggest a departure from this rule, we do not follow *People v. Robinson* (1977), 56 Ill. App. 3d 832, 371 N.E.2d 1170, *People v. Montgomery* (1977), 51 Ill. App. 3d 324, 366 N.E.2d 623, and *People v. Baer* (1976), 35 Ill. App. 3d 391, 342 N.E.2d 177.

We therefore find the trial court correctly excluded that testimony. Decedent was a hitchhiker first seen by defendant on the day of her death; they were strangers to each other, and he had no prior knowledge of her character.

## VIII.

■■ Defendant further contends the trial court improperly instructed the jury by Illinois Pattern Jury Instruction, Criminal, No. 3.07 (1968), that defendant made a confession. He argues the statement he gave to the investigating police officers was at most an admission, not a confession to murder, as it raised issues of self-defense or provocation. Since defendant made no objection in trial to the instruction, the issue is waived. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331; *People v. Mallett* (1970), 45 Ill. 2d 388, 259 N.E.2d 241.) We decline to consider this issue as plain error under Supreme Court Rules 451(c) and 615(a) (Ill. Rev. Stat. 1977, ch. 110A, pars. 451(c) and 615(a)), as on examination of the statement we have determined that it cannot fairly be said to raise issues of self-defense or provocation (*People v. Weeks* (1976), 37 Ill. App. 3d 41, 344 N.E.2d 791), and it was correctly characterized as a confession.

## IX.

■■ Defendant's final contention is that his sentence of 20 to 25 years imprisonment is excessive and should be reduced to a minimum of 14 years. We decline to do so. The sentence imposed is within the range permitted by statute (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(c)) and does not reflect an abuse of the trial court's discretion under the circumstances of this case. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Defendant's conviction for murder and sentence thereon is therefore affirmed in all respects.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.