THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SAMUEL TAGLIA, Defendant-Appellant.

Second District No. 78-71

Opinion filed July 11, 1979.

Mary Robinson and Marilyn J. Martin, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Samuel Taglia, along with a co-defendant, John Sellinger, was found guilty of possession of burglary tools (Ill. Rev. Stat. 1975, ch. 38, par. 19—2) by a Lake County jury. Taglia was sentenced to a one- to three-year term to run consecutively with a sentence imposed in an unrelated case.

Prior to trial, the defendant succeeded by motion *in limine* to limit prosecutorial references to the defendant as a "known burglar" and use of evidence of the defendant's prior bad acts.

At trial Arthur Walker, a former Lake Forest police officer, testified that on November 25, 1975, at approximately 7:10 p.m., he was walking on Deerpath Road in Lake Forest. As Walker approached the Village Antique Shop two men exited from a doorway and passed him by. Walker began to testify that the two men "looked familiar" when defense counsel moved for a mistrial. The motion was denied. Walker testified that he then had a brief conversation with fellow Officer Gernenz and left the area.

Officer Gernenz testified that while in his parked squad car, he saw co-defendant Sellinger enter a doorway while Taglia remained in front. Sellinger then exited and the two men walked across the street to the Village Antique Shop. Gernenz, who was about 350 feet away, then saw Sellinger bend over the door lock while Taglia remained at the edge of the doorway. Gernenz called a marked squad car. When this car drove

by, the defendants left the doorway and crossed Deerpath Road and got into a car.

Lake Forest Police Officer John Currie testified that as he drove past the scene and observed the defendants by his "peripheral vision," he saw Sellinger bent over the doorway. In his report of November 25, 1975, Currie had stated Sellinger was in front of the store next to the antique shop. At trial he corrected this "mistake."

The testimony shows that the defendants then left the area by car followed by Gemenz who was followed by Currie. While the defendants apparently made no effort to evade the officers, their car crossed over the double yellow line. Currie then activated his police lights and stopped the defendants' car. At trial Currie testified that items, including a brown leather case, were tossed from the defendants' car. Taglia was arrested for improper lane usage. Currie then conducted a pat-down search of defendant Taglia and removed a key chain containing eight keys, six of which were keys commonly used for alarms and cabinets. After this search, Currie recovered an object that he believed to have been among the items tossed from the car. The object was a set containing a "tension bar" and about 20 lockpicks which were later identified as belonging to co-defendant Sellinger, a certified locksmith. A pat-down search of Sellinger revealed another set of keys usable for alarms, cabinets, cash registers, and doors.

After Taglia was taken to the police station he consented to a search of his car. Officers removed the following items from the trunk: a black jack, a radio scanner, drills, a mechanical claw, three steel balls, and some cutting tools.

Officer Ridel searched the area around the antique shop on December 2, 1975, some seven days after the arrest. In a gutter near the store he found a piece of rusted metal 4 to 5 inches in length. However, this object was not turned over to the police crime laboratory until December 23, 1975.

The owner of the antique shop testified she locked the store's front door from the inside when she left on the afternoon of November 25, 1975. When she returned the following morning, she was unable to unlock the front door from the inside. With effort the door was opened from the outside but from then on the door could not be locked from the inside. On December 1, 1975, the owner removed the inside cylinder of the two cylinder lock and gave it to the police. (The outside cylinder was never given to the police however.) There appeared to be a dark foreign object in the inside cylinder.

Officer Donald Verbeke was called by the State as an expert witness. He had recovered two small pieces of metal from the lock cylinder which he identified as portions of a lock pick. He further testified that although

rust prevented a physical match-up, he felt it "highly probable" that the pieces found in the cylinder and the metal found in the gutter were part of the same lock pick.

At the close of the State's case, defendant moved for a directed verdict. This motion and a renewal motion after the defense case were denied.

The defendant raises three contentions on appeal: that his guilt was not proved beyond a reasonable doubt, that the trial court improperly instructed the jury on accountability, and that the prosecutor's opening statement and examination of a State's witness were improper.

■■ The defendant originally phrased the reasonable-doubt issue in terms of an error in denying his motion for a directed verdict at the close of the State's case. It is well settled, however, that the introduction of evidence by the defendant waives any appeal of the denial of a directed verdict. (*People v. Washington* (1962), 23 Ill. 2d 546, 179 N.E.2d 635; *People v. Slaughter* (1963), 29 Ill. 2d 384, 194 N.E.2d 193.) In his reply brief, the defendant does not address this waiver issue which was raised by the State; instead, he rephrases his argument in terms of a failure to prove guilt beyond a reasonable doubt.

To dismiss defendant's argument on the basis of waiver would be to exalt form over substance. While using the denial of a directed verdict as the title of his argument, defendant, in substance, argued a failure to prove guilt beyond a reasonable doubt. Thus we will respond to the substance of the defendant's argument.

The offense of possession of burglary tools is defined as the possession of tools suitable for breaking into a building with the intent to enter a building and with intent to commit a felony or theft therein. (Ill. Rev. Stat. 1975, ch. 38, par. 19—2.) The major contention of the defendant is that the testimony of the police officers is so flawed that the requisite intent was not proved beyond a reasonable doubt.

The defendant was able to highlight a number of contradictions within the officers' statements. For example, at the hearing on the motion to suppress, Officer Currie testified he could not recall which of the defendants was standing at the antique shop doorway; at trial he testified that it was Sellinger. Similarly Currie testified earlier that he was in plainclothes, while at trial he emphatically denied making this earlier statement. Currie also testified at trial that he saw Sellinger's eyes focus on the lock, that Taglia "nudged" Sellinger and that he (Currie) established eye contact with the defendants. These observations, however, were made by means of his "peripheral vision" from a moving police car while Sellinger was standing inside a darkened recessed doorway. Gernenz's observations were challenged on a similar basis as he was some 350 feet from the scene.

■■ These discrepancies, while numerous, are minor and present a question of credibility that was resolved by the jury. (See *People v. Patrick* (1977), 46 Ill. App. 3d 122, 123, 360 N.E.2d 792.) In reviewing the sufficiency of the evidence, the decision of the jury will be affirmed unless the reviewing court can find reasonable and well founded doubt as to the defendant's guilt. (*People v. Parks* (1977), 50 Ill. App. 3d 929, 932, 365 N.E.2d 1339.) Here there is ample evidence to support the jury's findings, including the defendants' prolonged presence at the entrance of a closed antique store, their flight from the scene after the appearance of the marked police car, their tossing of the lock picks from their car, the large quantity of tools found in the car's trunk, and the damage to the antique store's lock. In sum, we find no reason to overturn the jury's determination of guilt beyond a reasonable doubt.

The second issue raised by the defendant concerns the trial court's instructions to the jury. Over the objections of both defendants, the trial court instructed the jury on an accountability theory:

"A person is responsible for the conduct of another person when, either before or during the commission of a crime, and with the intent to promote or facilitate the commission of a crime, he knowingly solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of the crime." (See Illinois Pattern Instructions, Criminal, No. 5.03 (1968).)

Citing the case of *People v. Lusietto* (1976), 41 Ill. App. 3d 205, 353 N.E.2d 385, defendant argues that giving an accountability instruction was error as the defendant's liability could have only been as a principal. In *Lusietto* the defendant allegedly provided the tools and car used in a burglary. He was found by the police inside the burgled premises, thus clearly establishing him as a principal. The *Lusietto* court found that the use of an accountability instruction, ostensibly for the intent issue, was improper. Defendant Taglia further contends that because possession is a uniquely personal offense, an accountability theory was improper.

○ 3, 4 The fact that a defendant may be guilty of direct participation in a crime does not automatically render an instruction on accountability improper. (*People v. Fulton* (1979), 68 Ill. App. 3d 915, 925, 386 N.E.2d 605; *People v. Stark* (1966), 33 Ill. 2d 616, 213 N.E.2d 503.) Even slight evidence upon a theory of accountability will justify the giving of an instruction. (*People v. Addison* (1977), 56 Ill. App. 3d 92, 371 N.E.2d 1025; *People v. Clifford* (1976), 38 Ill. App. 3d 915, 349 N.E.2d 922.) Here the defendant was charged with the possession of burglary tools, including not only the tools found in his trunk and the keys found on his person, but also the lock picks thrown from the car. The record indicates that these lock picks belonged to co-defendant Sellinger, and thus an accountability instruction was justified. Defendant cites no authority for his theory that

accountability is inapplicable to possessory offenses. We find that in a case such as this, where the items possessed belong to more than one co-defendant, an accountability instruction may be proper.

■■ Finally the defendant contends that there was a violation of the trial court's order, entered pursuant to the motion *in limine*, which precluded reference to prior acts of the defendant or to his being a "known burglar." In his opening statement, the prosecutor stated that witness Walker, a former police officer, would testify that he recognized the defendants on the night in question. While the judge declined to declare a mistrial, he cautioned the prosecutor that such a reference might be improper. When Walker was on the stand, he did indeed testify that he recognized the defendants. Again the judge denied defendant's motion for a mistrial although he remarked it was a "close call."

These remarks on Walker's recognizing the defendant are not sufficient to warrant a reversal. There was no direct violation of the prohibitions granted in the motion *in limine*. While the defendant maintains that the inference of past criminal activities is clear, he is unable to cite a case where such limited remarks have been found to be sufficient for a reversal. *People v. Blakely* (1977), 50 Ill. App. 3d 536, 365 N.E.2d 996, is the closest case. However, in *Blakely* there were repeated attempts, through a variety of devices, to link the defendant to past criminal activities.

■■ The prosecutor also made reference to the presence at the scene of a hypodermic needle. This remark presents a slightly more compelling argument for reversal. Attempts to tie a theft-offense defendant to narcotics use are improper and prejudicial. (*People v. Novak* (1965), 63 Ill. App. 2d 433, 442-43, 211 N.E.2d 554; *People v. Lewis* (1972), 6 Ill. App. 3d 101, 105-06, 285 N.E.2d 168.) However here we have a single isolated remark in an opening statement. Moreover, this statement was prefaced with a comment that what was said was not evidence. (See *People v. Kristovich* (1975), 32 Ill. App. 3d 979, 983, 336 N.E.2d 772.) We find any error to be harmless beyond a reasonable doubt.

In sum we hold that the defendant's guilt was proved beyond a reasonable doubt, that the accountability instruction was proper, and that any error in the prosecutor's opening statement or examination of witness Walker was harmless. Therefore we affirm the judgment of the court below.

Affirmed.

RECHENMACHER and SEIDENFELD, JJ., concur.