THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SHARON McNAIR, Defendant-Appellant.

First District (1st Division)    No. 80-593

Opinion filed November 23, 1981.

324

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, George M. Velcich and Michael J. Kelly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Sharon McNair (defendant) was found guilty of conspiracy to commit escape (Ill. Rev. Stat. 1973, ch. 38, par. 8—2) and also of aiding prisoners to escape (Ill. Rev. Stat. 1973, ch. 38, par. 31—7(b)). She was sentenced to seven years. She appeals.

Our examination of the entire record had convinced us the proof of guilt is sufficient beyond any reasonable doubt, and actually overwhelming. The record shows:

Michael McNair and Bobby Lewis were indicted during 1974 for burglary, several rapes, armed robbery, armed violence, unlawful restraint, and unlawful use of weapons resulting from a home invasion. Bond for Michael McNair was fixed at $250,000 and for Bobby Lewis at $100,000. The cases were pending in the courtroom of Honorable Albert S. Porter, judge of the circuit court. The cases were called on a number of occasions. Defendant was present in court at each of these times. Judge Porter never held any hearing on a motion to reduce these bonds and never entered any order for reduction. During March of 1975 a deputy clerk in Judge Porter's courtroom noticed more than 25 bond reduction slips, referred to as "Form 199," were missing. He reported this to his supervisor.

On March 19, 1975, Eddie Hoskins, a deputy clerk of the circuit court, tendered a number of these bond reduction forms to the supervisor of the Cook County Department of Corrections. These various documents showed bond for Michael McNair reduced from $250,000 to $1500 and bond for Bobby Lewis reduced from $100,000 to $1000. The cases of these men had been called in open court that day and continued by agreement. The two men read and signed their bonds. They left the jail in company of the defendant.

The evidence showed all of the documents upon which the release of these men was predicated were spurious. None of these documents had been prepared by Judge Porter or by his clerk. A white woman had ordered the rubber stamp of Judge Porter's signature during January of 1975 from Utility Stationery store. The police found on a dresser in the apartment occupied by defendant, Michael McNair and Bobby Lewis, copies of the bonds actually signed by the two men upon which their releases were obtained, originals of the spurious bond reduction slips, the false rubber stamps, and a Utility Stationery paper bag. A different colored ink from the one used by Judge Porter appeared on these documents.

Expert testimony identified the various documents found on these premises. The expert established the documents did not contain imprints by Judge Porter's stamp but did contain the imprint of the stamps found on the dresser. The handwriting on the Form 199 bond reduction slips was not that of the Judge's regular clerk or of the clerk who worked in Judge Porter's courtroom on the date of the release of the prisoners.

Defendant had been present every time the case against McNair and Lewis had been called, even including days upon which they did not appear. She had visited them in jail. Defendant and Michael McNair were married several days after his release. The apartment in which these items were found, number 2A at 6230 North Hoyne Avenue, had been rented by the defendant. The bonds for release of the prisoners had been posted by

a woman who had listed a telephone number thereon. This number was traced to the same apartment rented by defendant under the name Sharon Marshall and occupied by her, her husband and Lewis.

Additional portions of the testimony will be described in detail as required.

The State contends preliminarily defendant failed to file a written motion for new trial (Ill. Rev. Stat. 1979, ch. 38, par. 116—1(b)) so that most, or all, of the contentions raised in defendant's brief have been waived. *People v. Adkisson* (1980), 83 Ill. 2d 1, 7, 413 N.E.2d 1238.

■■ The record shows counsel for defendant made an oral motion for new trial. The prosecutor made no specific objection to the use of the oral motion but merely told the court that the State rested on responses made during trial. Since the State failed to object specifically to the oral motion and failed to request that the grounds for new trial be specified in writing, we find no waiver as a result of defendant's oral motion. *People v. Boyd* (1980), 88 Ill. App. 3d 825, 852, 410 N.E.2d 931, *appeal denied* (1981), 82 Ill. 2d 586.

## I

The defendant filed a written motion to quash her arrest and to suppress evidence taken by the police from her apartment. Defendant testified simply that on April 2, 1975, at 4:30 a.m. the police entered her apartment without a warrant and placed her under arrest. The State introduced evidence showing that, commencing March 24, 1975, the police were investigating the homicide of a person named Roger Hickman. On that date police found Hickman's body in a room at the Tropicana Motel. The deceased had been a witness for the State in still another homicide case. The body of the deceased had been dismembered. The police were informed that the room where the remains were found had been rented the previous evening by a white female generally described in a manner approximating the defendant. In addition, a resident of the motel had seen two black men leaving the room with a white woman. The general descriptions of these two men were close to Bobby Lewis and Michael McNair.

The police received anonymous information that the woman who had rented the motel room was married to a black person who had recently left the county jail. The name of "Ruby Black" was given to the police in this connection. The informant also told the police a person known as "Ruby Black" might be living in the approximate area of the Hoyne Avenue apartment rented by defendant.

The police were then advised Michael McNair had been released on forged bond slips and on bail furnished by a young white female; Michael McNair had a girlfriend named Sharon and his street name was "Black

Ruby." A telephone number had been written on the spurious release documents. Further investigation from this disclosure led the police to the apartment on Hoyne Avenue. The police also found a similarity of handwriting between the registration card used for the room at the Tropicana Motel and the lease application for the Hoyne Avenue apartment. The police ascertained a young white woman had rented the apartment. She resembled a composite sketch of the woman who had rented the motel room.

On April 1, 1975, about 10:30 p.m. the Hoyne Avenue apartment was placed under surveillance. The police had arrest warrants for Michael McNair and Bobby Lewis. At 1 a.m. a white female and a black male entered the building. The man conformed to the general description of one of the men who had left the Tropicana Motel with the young woman. The lights in apartment 2A of the building went on. About 3 a.m. the same man left the building. It was Bobby Lewis. He was placed under arrest. The police obtained a key to the apartment from Bobby Lewis. They simultaneously called the apartment to announce their office and impending entry and made entry with the key. Defendant was found standing in the living room there. At her feet police found a gun, assorted cartridges "and a quantity of narcotics." Defendant was arrested. A police officer testified that as soon as he entered the apartment he saw defendant was wearing wire-rimmed glasses which conformed to the description of the young lady who had rented the Tropicana room and she resembled a composite sketch of that same person.

At the same time, the police observed a dresser in the bedroom. On top of the dresser, or in an open drawer, they saw in plain view a bond receipt, two No. 199 bond reduction forms, a paper bag of the Utility Stationery store, a stamp pad, rubber stamps bearing the names of Judge Porter and his clerk and a date stamp. These were the articles later introduced in evidence and above described. Defendant was then arrested. On April 2, 1975, the police officers were furnished with a search warrant in this regard and they then took possession of the items in question. The police remained in the apartment until they had obtained these documents and for some time thereafter. This was because of an unusual snow storm which made traveling difficult. The trial judge denied the motion to quash the arrest and suppress the evidence.

■■ ■ Probable cause or reasonable grounds to arrest depend upon whether " 'the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense.' " (*People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101 S. Ct. 564, quoting from *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342

N.E.2d 356.) The conclusion reached by the trial court may not be disturbed by this court unless we find it "manifestly erroneous." (*People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280, and cases there cited.) A lesser standard is required to support a finding of probable cause than would be necessary for a conviction. Courts "are not disposed to be unduly technical" in this regard. *Robinson*, 62 Ill. 2d 273, 277.

In the instant case, the officers were aware of the close association between defendant and Michael McNair. Police knew the room in the Tropicana Motel, where the gory homicide was committed, had been rented by defendant. The police knew Michael McNair and Bobby Lewis had been bailed out by a white young lady and Michael McNair was friendly with a young lady named "Sharon." A resident at the motel told the police he saw two male blacks and a white female leaving the room. The police received an anonymous telephone call to the effect that the woman who rented the motel room was married to a black person recently released from the county jail. The police knew about the rape, home invasion and robbery allegedly committed by McNair and Lewis and learned they had been released on bail on March 19.

■■ In addition, the police knew their release had been effected by forged bond documents upon which the same white woman had written a telephone number. This number was traced to the apartment in question, No. 2A at 6230 North Hoyne Avenue. The police found a young white woman had rented this apartment. The building manager advised that this woman resembled a composite sketch, shown her by the police, of the woman who rented the motel room. The police noted clear similarities between the handwriting on the rental application and the motel registration card. The police noted a black male resembling Bobby Lewis and the white woman entered the apartment building on Hoyne Avenue and shortly turned on the lights in apartment 2A. The police saw the incriminating documents on the dresser in the apartment in plain view. In our opinion, the able and experienced trial judge acted with complete legal propriety when he found the police had probable cause to arrest the defendant.

Defendant carries the argument further by contending that the police entered her apartment without a warrant and without exigent circumstances so that the arrest was unlawful despite any showing of probable cause. Defendant cites cases such as *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, which has been followed and applied in other decisions including *People v. Rembert* (1980), 89 Ill. App. 3d 371, 411 N.E.2d 996. The various factors required to show exigent circumstances are fully discussed in *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543.

■■ In our opinion, upon consideration of the following factors, we

conclude there were sufficient exigent circumstances here to justify the arrest of defendant even without considering the need for a warrant:

(1) The arrest was made a short time after the police were able to ascertain the residence of defendant and to work out the many details which linked her to the dismemberment murder and to the unlawful release of McNair and Lewis from custody.

(2) We do not find deliberate or unjustified delay by the police. The clever manner in which McNair and Lewis were released and the unusual precautions used by defendant to conceal her identity and whereabouts were responsible for any slight delay between commission of the crime and the arrest of defendant.

(3) The police did not fear that the defendant herself was armed. A great deal of fear was generated by the identity and conduct of the close associates of defendant including her husband. When arrested, Michael McNair was armed with a .45-caliber pistol which he had cocked. Upon entry into the McNair apartment police found a .357 Magnum revolver. The circumstances of the home invasion and rape and of the dismemberment homicide showed the police the character of the violent quarry they were stalking. There was a definite need for prompt police action in this regard.

(4) As shown, the evidence of probable cause is crystal clear.

(5) After observing the defendant and Lewis enter the building and lights going on in apartment 2A, the police knew with certainty that defendant and her associate were on the premises.

(6) There is a strong element of consent here in that Lewis, who had been provided with a key to the apartment given to him by one of the occupants, surrendered the key to the police so that they made a peaceful entry. In any event, the evidence shows the entry was peaceful.

Upon this basis, the conclusion is manifest that even if the police had no warrant for the arrest of defendant, their entry was proper because of exigent circumstances. Further, entirely aside from the issue of exigency, the arrest of defendant was legally justified. It must not be forgotten that the police had arrest warrants for Lewis and McNair. McNair was one of the occupants of the apartment equally with his wife, the defendant. As a general matter, "an arrest warrant is the desired means by which an individual's right to privacy is protected." (*People v. Bean* (1981), 84 Ill. 2d 64, 69, 417 N.E.2d 608.) Consequently, the police were fully justified in entering the apartment to arrest Michael McNair. Since McNair was not immediately visible in the living room, it was the duty of the police under the warrant to determine if he was present in the bedroom. Upon entering therein they did not find him, but they saw immediately in plain view on the dresser the rubber stamps with the name of the judge and copies of other papers which served to complete the chain of evidence against

defendant as the mastermind and perpetrator of the unlawful release of McNair and Lewis from custody. In this situation the evidence was not discovered as the fruits of a search. On the contrary, "it is not a search to observe that which is in open view." *People v. Berg* (1977), 67 Ill. 2d 65, 68, 364 N.E.2d 880.

■■ Upon receiving this information, the police made application for and shortly obtained a search warrant providing for search of the apartment which was executed shortly thereafter. Any delay in obtaining the search warrant after the police had observed the evidence in plain view resulted from blizzard conditions which made traveling difficult. We conclude the trial judge properly denied the motion to quash the arrest and to suppress the evidence.

## II

Defendant contends that since McNair and Lewis did not know their release was illegal, there was no escape. Thus, defendant did not aid in any escape. Defendant cites *People v. Dolatowski* (1968), 94 Ill. App. 2d 434, 237 N.E.2d 553, in which a defendant was completely intoxicated. This court held he was unable to formulate the specific intent required for escape. The pertinent statute provides that a person charged with the commission of a felony "who intentionally escapes from any penal institution" is guilty of escape. (Ill. Rev. Stat. 1979, ch. 38, par. 31—6(a).) However, the basic defect of defendant's contention is that the defendant here is not charged with the crime of escape but, as above shown, with conspiracy and with aiding an escape. No sentence was imposed by the trial court in connection with the latter offense.

■■ It follows that the guilt of Michael McNair and Bobby Lewis of the crime of escape depends upon whether they left prison with knowledge of the commission of the fraud. Their knowledge or intent was a question of fact for the jury. The jury disposed of the issue by finding defendant guilty beyond a reasonable doubt.

The guilty knowledge of McNair and Lewis has been fully proved beyond any type of doubt. It is impossible to conceive that these men who knew very well that the bail required of them was $350,000, or a cash deposit of $35,000, suddenly found without any hearing that their bail was reduced to a total of $2500 requiring a cash deposit of $250. These men saw the bond slips, filled in their names and addresses and signed the spurious documents showing an amazing bond reduction. In addition, each of them wrote a false address on the bail slips. However, this entire point is meaningless.

The trial court sentenced defendant only for conspiracy. The State contends this court should remand the case for imposition of sentence on the conviction of aiding escape. (See *People v. Scott* (1977), 69 Ill. 2d 85,

370 N.E.2d 540.) We reject this contention. Defendant was released from custody on November 21, 1978, because she had then served her sentence according to law. Under these circumstances, we will not remand the cause but we will instead vacate the incomplete judgment of guilty of the crime of aiding escape. See *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.

## III

Defendant contends the State failed to prove her guilty beyond a reasonable doubt of conspiracy to permit escape. It was not necessary for the State to prove that the conspirators actually met and entered into a specific agreement. (*People v. Jones* (1979), 75 Ill. App. 3d 214, 224, 393 N.E.2d 1132, *cert. denied* (1980), 445 U.S. 968, 64 L. Ed. 2d 246, 100 S. Ct. 1662, and cases there cited.) This record discloses circumstantial evidence from the facts and circumstances which prove the common criminal purpose.

In proving conspiracy the State need not exclude every reasonable hypothesis consistent with innocence. In *People v. Foster* (1979), 76 Ill. 2d 365, 374, 392 N.E.2d 6, the supreme court restated the accepted rule of law quoting *People v. Bernette* (1964), 30 Ill. 2d 359, 367, 197 N.E.2d 436:

" 'The jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but it is sufficient if all the evidence, taken together, satisfies the jury beyond a reasonable doubt of the accused's guilt.' "

■■ The facts above stated prove guilt beyond any reasonable doubt. The verdict of the jury is completely supported by the evidence. See *People v. Yarbrough* (1977), 67 Ill. 2d 222, 227, 367 N.E.2d 666.

## IV

Defendant made an oral motion *in limine* that no mention be made of the fact defendant is white and McNair and Lewis were black. After discussion with counsel, the trial court stated these facts "may come out during the course of the trial" but, the court added, there should "not be certainly a direct reference to the fact" that the two men are black. The able trial judge is to be commended for his zeal in making certain that the defendant received a fair trial.

■■ During the testimony of one of the officers, reference was made to the street name, or nickname, of "Black Ruby" or "Ruby Black" as applied to Michael McNair. Counsel for defendant moved for a mistrial. The trial judge denied the motion for mistrial. We approve of this ruling. In our opinion, it was necessary for the State to show the use of this name and we see no error in permitting it. Furthermore, this testimony was not a

violation of the directive of the trial court. Defendant was not prejudiced by this testimony.

While this motion for mistrial was being heard, the conversation between the court and the attorneys turned to additional testimony by the officer. The officer had testified, in describing the events prior to the arrest of the defendant, that as he came into the living room area, he saw defendant standing there. The officer added, "There was a loaded .357 Magnum revolver on the floor near her foot. There was a small bag of miscellaneous caliber cartridges, plastic bag, clear plastic bag, as I recall, and a small quantity of narcotics on the living room floor." No objection to this testimony was made by defendant at that time.

After additional questions had been answered, a recess was had and the trial court then ruled on the issue of violation of the order entered on the motion *in limine*. The trial judge particularly alluded to the police officer's testimony regarding the narcotics. Counsel for defendant then adopted the argument concerning the narcotics and added this element to the motion for mistrial. The trial judge denied the entire motion and thought it best not to rule on the issue of the narcotics before the jury as repetition would not aid the situation. No additional objection was made by either counsel and the trial proceeded. Defendant claims reversible error in this regard.

In our opinion, the prosecution may introduce evidence as a narrative of police activities leading to the arrest and subsequent identification of a defendant. (See *People v. McShan* (1975), 32 Ill. App. 3d 1068, 1074, 337 N.E.2d 263, *appeal denied* (1976), 61 Ill. 2d 603.) The same result was reached by the court in *People v. Sessions* (1968), 95 Ill. App. 2d 17, 24, 238 N.E.2d 94, where this court stated:

> "In a criminal prosecution the State may offer a continuous narrative of the events that formed the context of the arrest. [Citations.] If this narrative includes connected crimes, proof of these crimes is permissible as part of the res gestae. [Citations.]"

We find *Sessions* and other authorities cited to the same effect in *People v. Bolton* (1974), 18 Ill. App. 3d 512, 514, 310 N.E.2d 22, *appeal denied* (1974), 56 Ill. 2d 588.

Defendant depends and relies upon *People v. Lewis* (1972), 6 Ill. App. 3d 101, 285 N.E.2d 168, and *People v. Novak* (1965), 63 Ill. App. 2d 433, 211 N.E.2d 554. In these cases the court held that the testimony that the defendants were in possession of drugs (*Novak*) and hypodermic needles (*Lewis*) was prejudicial error. In *Lewis*, the prosecutor referred to the narcotic needles found in possession of defendants twice in his opening statement, on direct examination of a police officer and in redirect examination of the same officer. A number of questions were put to the officer regarding the hypodermic needles. 6 Ill. App. 3d 101, 103-04.

In *Novak*, the State repeatedly made a point of the alleged use of narcotics by the defendant by putting a direct question to him on this subject and also by a good deal of evidence by the police regarding needle marks on defendant's arm. In addition, the prosecutor referred to the needle marks in his final argument. This court expressly noted that it could not say the evidence of guilt was strong enough to overcome these matters but characterized the case as so close that these tactics may have affected the verdict. 63 Ill. App. 2d 433, 443-44.

In the later case of *People v. Taglia* (1979), 76 Ill. App. 3d 199, 392 N.E.2d 725, this court considered *Novak* and *Lewis*. In *Taglia*, as by the witness in the case at bar, there was a single reference to a hypodermic needle by the prosecutor. This court accordingly found "any error to be harmless beyond a reasonable doubt." 76 Ill. App. 3d 199, 204.

■■ In the case before us, the evidence of guilt is so strong that the elimination of this bit of testimony by the police officer would produce no different result. In other words, we are satisfied beyond all reasonable doubt that the alleged error was harmless and did not affect the right of the defendant to a fair trial. See *People v. Warmack* (1980), 83 Ill. 2d 112, 128-29, 413 N.E.2d 1254.


V

The final contention of defendant is directed to closing argument of the prosecutor. Defendant's brief devotes much space to this subject. We will categorize this criticism of the prosecution as pertaining to alleged comment on the defendant for failing to testify; statements by the prosecutor not supported by the record and adverse comments by the prosecutor concerning defense counsel.

Defendant stresses one alleged violation by the prosecutor. During final argument by the prosecutor the following occurred:

"MR. THEOBALD [prosecutor]: * * * One person in this courtroom knows and can tell you who signed those phony bond slips, who wrote them out, this person could have had their handwriting examined —

MR. TOOMIN [defense attorney]: Objection.

THE COURT: Objection sustained. The jury is instructed to disregard it. Move on to something else, Mr. Theobald.

MR. THEOBALD: She chose not to.

MR. TOOMIN: Objection.

THE COURT: Objection sustained.

MR. TOOMIN: Ask that he be admonished.

THE COURT: You are admonished not to mention that again since the Defendant is entitled to a fair trial, and your comments right now are not fair.

MR. THEOBALD: I'm sorry, Your Honor."

Defendant urges that this argument constituted reversible error. Defendant relies upon *United States v. Hastings* (7th Cir. 1981), 660 F. 2d 301. There, the court of appeals reversed a Mann Act conviction. In final argument, the prosecutor made four rather lengthy statements regarding failure of the defendants to "challenge" a number of events regarding which the complainants had testified. The prosecutor repeatedly stated that defendants "had never challenged" various acts with which they were charged.

■■ In our opinion, the situation in *Hastings* is far more detrimental to the rights of the defendants than the occurrence in the instant case. Here, objection by counsel for defendant was promptly sustained and the jury instructed to disregard it. The prosecutor was told "Move on to something else, * * *." In the heat of argument he added "She chose not to." We do not condone the failure of the prosecutor to take heed of the ruling of the court. However, we cannot overlook the prompt action taken by the trial court as above pointed out. In our opinion, this swift and decisive remedial action was sufficient to eliminate any conceivable prejudice that may have resulted to the defendant from the four additional words by the prosecutor. This is particularly true in view of the overwhelming evidence of the guilt of the defendant as above pointed out. We categorize this entire incident as harmless error.

We do not find it necessary to state all of the remaining points in detail. In our opinion, each of these contentions is fully refuted by one or more of the following established legal principles:

(1) Failure of defense counsel to object. *People v. Jackson* (1981), 84 Ill. 2d 350, 358-59, 418 N.E.2d 739.

(2) Unfavorable comment on defendant and the use of invectives was justified. See *Jackson*, 84 Ill. 2d 350, 360.

(3) The prosecutor was entitled to broad latitude in his final argument. *People v. Dominique* (1980), 86 Ill. App. 3d 794, 806, 408 N.E.2d 280, *appeal denied* (1980), 81 Ill. 2d 603.

(4) The rulings by the trial court on objections by defendant to the prosecutor's argument showed no abuse of discretion. *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324.

(5) In some instances the trial court sustained objections by defendant and instructed the jury to disregard the objectionable matter. *People v. Baptist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200.

(6) Examination of the record convinces us defendant has failed to show substantial prejudice as a result of the assailed arguments (*Baptist*, 76 Ill. 2d 19, 29-30), and has failed to show any or all of these arguments constituted a material factor in the conviction. *People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363.

(7) The evidence of guilt in this regard is so overwhelming that any or all of these assailed arguments, if error, were harmless beyond reasonable doubt. *People v. Skorusa* (1973), 55 Ill. 2d 577, 585, 304 N.E.2d 630, cited in *People v. Battles* (1981), 93 Ill. App. 3d 1093, 1099, 418 N.E.2d 22.

(8) The trial court instructed the jury that remarks of counsel were not evidence. (Illinois Pattern Jury Instructions, Criminal, No. 1.03 (2d ed. 1971); see *People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) Also, the trial judge instructed the jury that the facts were to be determined solely from the evidence before them. IPI Criminal No. 1.01; *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 121-22, 390 N.E.2d 1339.

For these reasons the judgment of guilt of aiding an escape is vacated and the judgment of guilt of conspiracy is affirmed.

Judgment affirmed in part and vacated in part.

CAMPBELL, P. J., and O'CONNOR, J., concur.