THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAUL VEGA, Defendant-Appellant.

Second District    No. 81-106

Opinion filed June 30, 1982.

Mary Robinson and Manuel Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Schumacher, State's Attorney, of Oregon (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

On August 30, 1980, defendant, Raul Vega, shot Rudy Najera five times with a .45-caliber pistol, causing his death. Both men had earlier been drinking in the Saenz Cafe in Rochelle, Illinois, where an altercation had arisen between them. The cafe's proprietor had asked the defendant to leave, and defendant had done so. Najera left the cafe a few minutes later. Shortly thereafter, defendant and Najera were observed facing each other over the trunk of a parked car. A short conversation took place, and then defendant fired.

The defendant was found guilty after a jury trial of murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(1)) and sentenced to 20 years' imprisonment. On appeal, he contends that he was impaired in his ability to present his theory of self-defense to the jury by rulings of the trial court which excluded evidence that the victim had a history of arrests for offenses involving violence. Defendant also contends that the trial court erred in refusing defendant's tendered issues instructions for the offense of murder.

Defendant testified on his own behalf that he had known Najera since 1974. During that time, Najera had beaten him on four occasions, the first of which required his hospitalization. Najera had threatened defendant practically on a daily basis between 1974 and 1976, and on approximately 100 occasions thereafter. Najera would also bump into defendant's car with his vehicle. Defendant responded in the affirmative when he was asked if he knew of Najera's ever having problems with the police for any type of crime, and stated he knew that Najera had cracked the skull of one man and broken the nose of another. Defendant's brother testified that his life had also been threatened by Najera.

Defendant testified that he was in the Saenz Cafe on August 30, when Najera called him over and said some ugly things about his mother. Defendant responded by slapping Najera, but afterwards became apprehensive that the other man would retaliate. The defendant saw Najera approach an individual named Osman, who defendant knew to have a gun, and thought that Osman gave Najera a weapon. Defendant left the cafe when he was asked to leave by the proprietor. As defendant walked away, Najera approached him, claimed to have a gun, and said that he would kill the defendant. Najera's right hand was concealed in his pants pocket, and defendant, who believed that Najera was armed, shot him five times.

■■ Defendant contends that the trial court denied him a fair trial as to his claim of self-defense by refusing to allow evidence concerning Najera's arrest record. The evidence sought to be adduced was testimony from Detective Dennis Leifheit of the Rochelle Police Department that Najera was also known by the name of Armando Arrendondo, and that Najera had a record of several arrests under that alias. These arrests, none of which had resulted in convictions, were for the offenses of criminal damage to property over $150, burglary, fighting, reckless driving, unlawful possession of cannabis and battery. In addition, Najera had been arrested for aggravated battery in 1974 and for two other counts of aggravated battery in 1979. Defendant argues that such evidence should have been admissible as tending to establish the reputation or character of the victim for turbulence and violence in a case where the issue of self-defense has been raised.

> "It is well established that where a claim of self-defense is made, and at the time of the incident the accused knew of the victim's reputation for violence or knew of specific violent acts by the victim, proof of such reputation or acts together with the accused's knowledge thereof is relevant and admissible to establish the reasonableness of the accused's apprehension of danger." *People v. Wolski* (1980), 83 Ill. App. 3d 17, 29, *cert. denied* (1981), 450 U.S. 915, 67 L. Ed. 2d 339, 101 S. Ct. 1356.

This evidence is admissible as tending to show the defendant's state of mind, and thus the character trait of the victim which is sought to be elicited must be one of which the defendant was aware. "Thus the law in Illinois still requires the exclusion of evidence of a victim's propensity for aggression unless the accused knew the victim had that trait." (83 Ill. App. 3d 17, 30.) Here, the defendant testified that he was aware that Najera had trouble with the police but did not claim an awareness of the other man's arrest record. Under the rule in *Wolski* (83 Ill. App. 3d 17), the testimony in question was properly excluded.

■■ Even were we to determine that the evidence here in question was

erroneously excluded, we would find the error to be harmless beyond a reasonable doubt in light of the fact that the trial court admitted substantial evidence concerning the victim's violent acts. (See *People v. Buchanan* (1980), 91 Ill. App. 3d 13.) This evidence included testimony that Najera had engaged in a pattern of threats and violence toward defendant over many years, and that Najera had inflicted serious injuries upon others. In view of the amount and the detail of this testimony, evidence concerning Najera's arrest record would have been merely cumulative.

Defendant also contends that the trial court erred in refusing his tendered issues instructions for the offense of murder. The jury in this case was given an issues instruction on murder which listed the following as the essential propositions required to sustain the charge of murder:

> "FIRST: That the defendant performed the acts which caused the death of Rudolfo Najera;
>
> SECOND: That when the defendant did so, he intended to kill or do great bodily harm to Rudolfo Najera; and
>
> THIRD: That the defendant was not justified in using the force he used."

At the conference on instructions, defendant tendered and the trial court refused to give two alternative issues instructions which added an additional proposition: that the defendant did not believe that circumstances existed which justified the use of the force which he used. The jury was also instructed as to the offense of voluntary manslaughter (defendant's instructions Nos. 13 and 14), in accordance with Illinois Pattern Jury Instructions, Criminal, Nos. 7.05 and 7.06 (2d ed. 1981) (hereinafter cited as IPI Criminal). These instructions informed the jury that voluntary manslaughter is committed when, at the time of the killing, the defendant believes that circumstances exist which would justify the killing, but the defendant's belief that such circumstances existed was unreasonable. The jury thereafter found defendant guilty of murder, but left the verdict forms for manslaughter unsigned.

Defendant contends on appeal that the language contained in the fourth proposition of his tendered issues instructions on murder was necessary in order to delineate the relationship between the offenses of murder and voluntary manslaughter, and that the trial court's failure to instruct the jury in this regard was prejudicially erroneous under the circumstances of this case. The State replies that the instructions taken as a whole were sufficient to inform the jury of the law to be applied to this case, and that the language in question was superfluous when, as here, the jury was instructed on the elements of murder and voluntary manslaughter.

The language of the defendant's tendered issues instructions was based on IPI Criminal No. 27.01 (1968), a sample set of jury instructions

for a case where murder, voluntary manslaughter and self-defense have been raised. Initially, it should be noted that the fourth proposition here in question has been removed from the sample set of instructions contained in the second edition of IPI Criminal.

In *People v. Stuller* (1979), 71 Ill. App. 3d 118, the jury was instructed both as to murder and voluntary manslaughter and returned verdicts of guilty as to both offenses. The issues instruction for murder failed to include the fourth proposition which is at issue here, which the court referred to as "a crucial element of the murder instruction * * *." (71 Ill. App. 3d 118, 121.) "The manifest purpose of this element of the murder instruction is to make the jury aware of the distinction between the crimes of murder and voluntary manslaughter * * *." (71 Ill. App. 3d 118, 122.) The court noted that the jury, by returning a guilty finding as to voluntary manslaughter, had found defendant to have been acting under an actual but unreasonable belief that the killing was justified. Since the erroneous omission of the fourth proposition from the court's instructions permitted the jury also to find defendant guilty of murder under these circumstances, defendant had been prejudiced, and only the conviction for voluntary manslaughter could stand.

*People v. Stuller* (1979), 71 Ill. App. 3d 118, was distinguished in *People v. Perez* (1981), 100 Ill. App. 3d 901, wherein the jury found the defendant guilty of murder and not guilty of voluntary manslaughter, and the court found that the latter fact betokened a rejection by the jury of any claim that defendant reasonably or unreasonably believed that his use of force was justified. "Thus, the omission of the fourth proposition of instruction No. 27.01 did not affect the jury's deliberation on the issue of murder." (100 Ill. App. 3d 901, 908.) The court in *Perez*, therefore, concluded that no plain error had occurred.

The omission of the fourth proposition from the issues instruction on murder was also discussed in *People v. Bergeron* (1973), 10 Ill. App. 3d 762. In that case, the defendant was found guilty despite his claim of self-defense. It does not affirmatively appear in the record that a voluntary manslaughter instruction was given, but the jury was instructed as to self-defense, a question as to which defendant's belief that his use of force was justified was a pertinent consideration. The trial court refused to incorporate a proposition concerning this question, phrased in identical language to the fourth proposition offered here, into the issues instruction on murder. However, the court noted that the self-defense instruction informed the jury that, " 'A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend him against the imminent use of unlawful force. * * *.' " (*People v. Bergeron* (1973), 10 Ill. App. 3d 762, 770.) This instruction was deemed to have apprised the jury of the law governing the justifiable use of force

and, when read together with the issues instruction on murder, adequately to have set out the law of the case. The court, therefore, found that the issues instruction on murder which incorporated the fourth proposition here in question was properly refused.

Finally, the State briefly discusses *People v. Lockett* (1980), 82 Ill. 2d 546, containing the supreme court's most recent discussion of the instructions to be given in a murder case where voluntary manslaughter and self-defense have been placed in issue. The State notes that the court there failed to require that an instruction incorporating the fourth proposition be given under such circumstances. However, that issue was not before the court in *Lockett*.

■■ In the present case, the instruction requested by the defense was an accurate statement of the law. However, where the concept sought to be conveyed by the requested instruction was adequately communicated to the factfinder by the instructions defining and delineating the elements of voluntary manslaughter so that the instructions as a whole informed the jury of the law to be applied, it may be concluded that no error occurred. (See generally *People v. Bergeron* (1973), 10 Ill. App. 3d 762.) In view of the deletion of this language from the revised IPI Criminal No. 27.01, we would be inclined to treat the refusal of defendant's instructions Nos. 12 and 18 as correct were it not for *People v. Stuller* (1979), 71 Ill. App. 3d 118. Although the State attempts to treat that case as an inconsistent verdicts case, that opinion unmistakably brands as error the failure to instruct the jury as to the fourth proposition of the former sample pattern issues instruction on murder. But whether or not a failure to give such an instruction is error, the law regards it as reversible error only when the accused has thereby been prejudiced. Such prejudice was apparent in *People v. Stuller* (1979), 71 Ill. App. 3d 118, because the jury found the defendant guilty of murder when its finding of guilty of voluntary manslaughter indicated its apparent conclusion that defendant believed his use of force was justified.

Where it appears that the jury found no such belief on defendant's part, shown by its finding defendant not guilty of voluntary manslaughter while finding him guilty of murder, reversal has not been required. (*People v. Perez* (1981), 100 Ill. App. 3d 901.) That case was decided in the context of review for plain error, but the language of the opinion forecloses any possibility that reversible error could be found on the facts of that case, even if the matter has been preserved for review. Defendant would distinguish that case on the basis that the jury there found the defendant not guilty of voluntary manslaughter, while in the instant case no verdict as to voluntary manslaughter was returned. Defendant concludes that it therefore cannot be said that the jury considered the question of defendant's unreasonable belief that the killing was justified.

However, the jury was instructed that it was not to single out certain instructions and disregard others. Although the jury did not return a verdict as to voluntary manslaughter, it should, nevertheless, be presumed that the jury acted in accordance with the judge's instructions. Thus, we view as untenable defendant's contention that the record must affirmatively reflect that the jury considered the issues instruction for voluntary manslaughter as a prerequisite to finding no prejudice from the instructional deficiency here alleged.

For the reasons stated, the judgment of the circuit court of Ogle County is affirmed.

Judgment affirmed.

NASH and VAN DEUSEN, JJ., concur.