THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BOOKER T. EPPS, Defendant-Appellant.

First District (1st Division)   No. 81—3073

Opinion filed August 22, 1983.

James J. Doherty, Public Defender, of Chicago (R.H.R. Silvertrust, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Michele A. Grimaldi, and Thomas A. Rieck, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, Booker Epps, after a jury trial, was convicted of voluntary manslaughter (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b)) and sentenced to a term of five years. On appeal, defendant raises the following issues: (1) whether the trial court erred by excluding evidence of the victim's prior convictions offered to show that the victim was the aggressor; (2) whether defendant was proven guilty beyond a reasonable doubt; and (3) whether the prosecutor's improper comments during closing argument denied defendant a fair trial.

At trial, Officer Robert Thomas testified that on May 21, 1980, at approximately 3 p.m., upon responding to a call with his partner, he found a dead man lying on the porch just outside the back door to a second floor apartment located at 4720 West Adams. The victim, who wore a dress shirt and dress pants, was shot in the back of his head and was unarmed. There were no tools or household products near the victim's body. Officer Thomas observed a bullet hole through the back door and shade on the door to the second floor apartment. The officer testified that defendant, who lived in the first floor apartment of that building, told the police that he did not know of a shooting at that location and that he did not own any weapons. However, after defendant consented to a search of the first and second floor apartments, the police officers found a rifle case in defendant's bedroom and a rifle behind some basement paneling. Defendant was arrested and taken to the police station.

Assistant State's Attorney Richard Schwind testified that defendant made a statement at the station. In the statement, which was admitted into evidence, defendant said that upon hearing noises, he got his rifle and went upstairs to the vacant second floor apartment. In the kitchen, he caught a glimpse of what appeared to be a person run-

ning out the back door and fired in the direction of the door. After seeing a person's body going down, defendant ran and hid his gun behind the panel in his basement. Defendant told the investigating officers that he had not heard gunshots. He subsequently found out that the person he shot was Leon Hatley, who had been in jail with him.

Defendant's testimony was substantially the same except that he testified that as a person appeared from behind the refrigerator, "flashing up as soon as the door swung open," defendant fired a shot. Defendant further testified that his brother owned the second floor apartment and that defendant was the custodian of the premises. On cross-examination, defendant admitted that the victim neither exhibited any weapons nor threatened defendant. Defendant also stated that he lied to the investigating officers regarding not knowing about a shooting and not owning a gun in order to cover up his actions.

■ During the trial, defendant attempted to introduce evidence of the victim's character by the use of prior convictions for manslaughter and robbery. According to defendant, the purpose of this evidence was to support defendant's testimony that the victim was the aggressor and had illegally broken into the premises. The State maintains that this evidence was properly excluded since defendant had no knowledge of the victim's criminal history at the time defendant shot him. Furthermore, the State asserts that the victim could not have been the aggressor since he already had run outside through the back door at the time he was shot. Additionally, the decedent was unarmed and did not possess or have near him any kind of tools or household goods.

We agree with the State's contention that the determination of whether the defendant's subjective belief was reasonable in a manslaughter case was for the jury (*People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520), and that based upon the evidence the jury could have properly concluded that defendant's belief that the shooting was necessary was unreasonable. The trial court did not err in excluding defendant's evidence of the victim's prior conviction for manslaughter and robbery for the justification of the use of deadly force.

■ Defendant next contends that he was not proved guilty beyond a reasonable doubt. Defendant relies upon the affirmative defense of justifiable use of force to protect his dwelling and has cited section 7—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 7—3), which provides:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's trespass on

\*\*\* or interference with \*\*\* real property (other than a dwelling) \*\*\*. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent the commission of a forcible felony."

Defendant asserts that his version of what led up to and caused the shooting and death of the victim was the only one given at trial and that the facts were not such as to prove that he was guilty beyond a reasonable doubt. Defendant stated that he heard noises and footsteps in the second floor apartment he was trying to rent, where he kept two refrigerators. The only people who had keys were his wife and himself. His wife was at work and he had not given anyone permission to be in the apartment. He concluded that a burglary was in progress and grabbed his loaded rifle and ran upstairs through the apartment. As he entered the kitchen, suddenly a person jumped out from behind one of the refrigerators and defendant fired immediately.

The People argue that the facts refuted defendant's belief that deadly force was necessary. At first, defendant denied having any knowledge of the shooting and denied owning a weapon. After the defendant consented to a search of the building, the police found a rifle case in defendant's bedroom and retrieved a rifle secreted behind some paneling in the basement. Later, at the police station, defendant admitted that he had lied to the police. Thereafter, defendant made a statement wherein he admitted shooting the decedent through the rear door of the second floor with the rifle recovered from the basement.

The uncontradicted evidence showed that the defendant shot an unarmed man (*People v. Easter* (1981), 102 Ill. App. 3d 974, 430 N.E.2d 612; *People v. Lester* (1981), 102 Ill. App. 3d 761, 430 N.E.2d 358) after the decedent was outside the door. The bullet went through the shade on the door, through the glass portion of the door, and then struck the decedent in the back of the head, killing him. The decedent's body was found outside the apartment. Defendant admitted that decedent was running through the door, and the physical evidence proved that the defendant fired the rifle after the decedent was outside the door.

The People maintain that what defendant saw for sure was the back door closing and that defendant's argument that his decision to shoot an unarmed man in the back of the head through a closed door was not a reasonable belief under the circumstances. Defendant did not know the identity of the victim at the time of the shooting, and any evidence of the victim's criminal history is irrelevant. (*People v.*

*Vega* (1982), 107 Ill. App. 3d 289, 437 N.E.2d 919; *People v. Wolski* (1980), 83 Ill. App. 3d 17, 403 N.E.2d 528.) Despite the exclusion of some evidence of the victim's criminal history, the jury heard evidence that the defendant knew the victim from their time together in the Cook County jail.

It was for the jury to determine whether the decedent's death was manslaughter or a justified killing and whether the defendant's subsequent belief that deadly force was necessary was a reasonable belief. (*People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520.) The jury was entitled to consider the facts as they confronted the defendant and the evidence the defendant knew at the time of the shooting. The jury knew from the uncontradicted evidence that the defendant did not rely upon the identity of his victim. The jury heard the defendant's story and rejected it. A reviewing court will not disturb the jury's verdict unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies entertaining a reasonable doubt of the defendant's guilt. (*People v. Evans*.) We believe from the evidence that the jury could have properly concluded that defendant's belief of justifiable use of deadly force was necessary to protect his dwelling was an unreasonable belief and that the evidence proved defendant's guilt of voluntary manslaughter beyond a reasonable doubt. Defendant's reliance on *People v. Fausz* (1983), 95 Ill. 2d 535, is misplaced.

■ Defendant's final contention is that improper comments made by the prosecutor during closing argument denied him a fair trial. Defendant claims that the prosecutor misstated the law, incorrectly shifted the burden of proof, and repeatedly stated that the defense had created smokescreens to mislead the jury. Defendant claims that the prosecutor told the jury that in order to justifiably use deadly force in defense of dwelling, one must show that it was necessary to prevent a felony and that the defense had not proven that the victim was a burglar. The State maintains that such statements were used to convey the message that the defendant had not produced credible evidence which would raise the defense of dwelling and shift the burden to the prosecutor to disprove that defense. Moreover, the statement demonstrates that the prosecutor had indeed disproved the affirmative defense of dwelling if the trier of fact believed that defendant had presented evidence to raise the defense. The State further claims that defense counsel's argument initiated and provoked a response by improperly offering his own personal assessment of the affirmative defense to mount a subtle personal attack upon the prosecution.

A prosecutor is permitted great latitude in his closing argument, and such argument may denounce the accused, reflect upon witness

credibility, and urge the fearless administration of the law if it is based on the facts in the record or inferences fairly drawn from those facts. (*People v. Bryant* (1983), 94 Ill. 2d 514; *People v. Bibbs* (1981), 101 Ill. App. 3d 892, 428 N.E.2d 965.) The prosecutor may not properly make comments which shift the burden of proof to the defendant. This undermines the presumption of innocence. (*People v. Smith* (1982), 111 Ill. App. 3d 494, 444 N.E.2d 565.) However, defense counsel may not invite or provoke a response and then claim that he was prejudiced thereby. Here, the court instructed the jury that closing arguments are not evidence and any statement made in argument, not based on evidence, should be disregarded. (*People v. Smith.*) An examination of the record has failed to show substantial prejudice as a result of the assailed arguments and has failed to show any or all of the prosecutor's arguments constituted a material factor in the conviction. (*People v. Jones* (1982), 108 Ill. App. 3d 880, 439 N.E.2d 1011; *People v. McNair* (1981), 102 Ill. App. 3d 322, 429 N.E.2d 1233.) Defendant's claims of the denial of a fair trial are unsupported by the record in the case.

For these reasons, the judgment of the circuit court of Cook County is affirmed and the State's motion for costs in the amount of $50 is granted.

BUCKLEY, P.J., and McGLOON, J., concur.